# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ABRAHAN de JESUS CANAAN**

       **Plaintiff,**

       **v.**             **CASE NO. 6:21-CV-0149-ORL-78GJK**

**Sheriff John Mina,**
**In his Official Capacity,**

**Deputy Sheriff JOE FARIAS-RIOS,**
**Individually;**

**Deputy Sheriff MATTHEW VELAZQUEZ,**
**individually;**

**Deputy Sheriff JAMES BAGGS,**
**individually;**

**Deputy Sheriff JOSHUA CALKINS,**
**individually;**

**Deputy Sheriff JORGE DIAZ,**
**individually;**

**Deputy Sheriff JESSE SALAZAR,**
**individually;**

**Deputy Sheriff NICHOLAS THORPE,**
**individually;**

**Deputy Sheriff MICHAEL DEEB,**
**individually;**

**and**

**Deputy Sheriff GREGG WYNN,**
**individually;**

       **Defendants.**
_____/

## 2ND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ABRAHAN de JESUS CANAAN, by and through undersigned counsel, hereby sues Defendants, Sheriff John Mina, Deputy JOE FARIAS-RIOS, Deputy MATTHEW VELAZQUEZ, Deputy JAMES BAGGS, Deputy JOSHUA CALKINS, Deputy JORGE DIAZ, Deputy JESSE SALAZAR, Deputy NICHOLAS THORPE, Deputy MICHAEL DEEB, and Deputy GREGG WYNN, and in furtherance thereof, states as follows:

## INTRODUCTION

1.     This is a federal civil rights action by Mr. Canaan for wrongful actions resulting in his permanent paralysis on January 31, 2017, by Deputies Farias-Rios' and Velazquez's unreasonable use of deadly force, as well as Deputies Baggs', Calkins', Diaz's, Salazar's, Thorpe's, Deeb's, and Wynn's excessive force, thus violating Mr. Canaan's federal constitutional and state statutory and common law rights.

## JURISDICTION & VENUE

2.     The Court has original jurisdiction over this action pursuant to 42 U.S.C. § 1331, the federal-question statute. As to the state-law claims, the Plaintiff invokes the Court's supplemental jurisdiction under 42 U.S.C. § 1367.

3.     Venue lies in this judicial district under 28 U.S.C. § 1391(b)(1) because one or more Defendants are situated within this venue, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

4.     Likewise, the Orlando Division is the division where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

5.       Mr. Canaan is a 54 -year-old citizen of the United States residing in the state of Florida.

6.       The Sheriff of Orange County is the executive officer responsible for the Orange County Sheriff's Office (OCSO) and its employees. The Sheriff was responsible for establishing OCSO polices against the unconstitutional use of force and its general operation in accordance with the law. The Sheriff is the final policymaker as to his own conduct and the execution of his duties.

7.       The Sheriff of Orange County on January 31, 2017 was Jerry Demings.

8.       Since the incident, he was replaced by Defendant Sheriff John Mina, who presently occupies the office.

9.       In assuming the rights and duties of office, John Mina also assumed all liability the former sheriff held in his official capacity.

10.     Plaintiff is pursuing an official capacity claim against Mina, as Demings' replacement. References in this action to acts or omissions of Demings are intended to establish official-capacity liability against Mina.

11.     All references to Defendants' titles and positions throughout this Complaint refer to their status on the date of Mr. Canaan's injuries-January 31, 2017.

12.     Defendants Farias-Rios and Velazquez were directly involved in the shooting incident and will be collectively referred to as the "Shooting Deputies." The Shooting Deputies are sued in their individual capacities. Each of these individuals was an employee of OCSO.

13.     The remaining Defendants, Baggs, Calkins, Diaz, Salazar, Thorpe, Deeb, and Wynn will be collectively referred to as the "Securing Deputies." Each of these individuals was an employee of OCSO and directly responsible for removing Mr. Canaan from his vehicle and securing him in hand cuffs, after he had been shot twice. The Securing Deputies are sued in their individual capacities.

14.     Each Defendant acted under color of law by being a government employee.

15.     Each Defendant was also acting within the course and scope of his or her employment.

## FACTUAL ALLEGATIONS

16.     On January 31, 2017, Mr. Canaan drove his vehicle to the back of a retail establishment in east Orlando. He exited his vehicle, leaving the driver's door open, with a hunting- style knife sheathed and attached to his belt in open view.

17.     Mr. Canaan then entered the store and began walking around, causing the notice of concern of store employees who called law enforcement.

18.     Minutes later, Mr. Canaan exited the front of the store, where he briefly unsheathed the knife and pointed it into the air.

19.     Once outside, Mr. Canaan walked in front of the store for a short distance before sheathing the knife.

20.     Responding to a 911 call regarding Mr. Canaan's activity, Deputy Farias-Rios arrived on scene and observed Mr. Canaan walking near the south side of the building, on his way to his parked vehicle at the rear of the store. Mr. Canaan was not near, nor threatening, anyone.

21.     Deputy Farias-Rios, with his body camera activated, got out of his marked patrol vehicle and drew his firearm, pointing it at Mr. Canaan while giving loud verbal commands to stop and get on the ground.

22.     Mr. Canaan ignored Deputy Farias-Rios' commands and continued toward his parked vehicle at the rear of the store, with Deputy Farias-Rios following on foot with his firearm still pointed at Mr. Canaan.

23.     Deputy Farias-Rios can be heard on his body camera video ordering Mr. Canaan to *"stop, get on the ground now, get on the ground!"* and *"I'm going to shoot you right now, dude!; get on the ground!"*

24.     Deputy Velazquez arrived on scene and also pursued Mr. Canaan on foot, with his AR-15 type rifle pointed at Mr. Canaan.

25.     Deputy Velazquez stated to Deputy Farias-Rios, *"less lethal,"* indicating that he wanted Farias-Rios to use non-deadly force to gain compliance with Mr. Canaan while Velazquez kept him at gunpoint. However, Deputy Farias-Rios never acknowledged Deputy Velazquez's request.

26.     Upon arriving at the rear of the store, Mr. Canaan unsheathed the knife and tossed it into his vehicle. He then entered the driver side of the vehicle and shut the door.

27.     As Mr. Canaan began to drive away, Deputies Farias-Rios and Velazquez used deadly force and fired at least fourteen (14) rounds from their weapons into Mr. Canaan's vehicle. One round was fired into the front windshield, approximately a dozen rounds fired into the driver's side of the vehicle, and at least three rounds were fired at the rear of Mr. Canaan's vehicle. One round that was fired at the rear of Mr. Canaan's

vehicle missed, traveled approximately 600 feet across a major boulevard, and entered a nearby convenience store.

28.     Despite being struck twice by the bullets and suffering traumatic injuries, Mr. Canaan was able to drive a very short distance from the scene and brought his car to a stop.

29.     Additional deputies arrived at Mr. Canaan's stopped vehicle, including the Securing Deputies.

30.     After the shooting, Deputy Farias-Rios entered his patrol car and drove to the location of Mr. Canaan's stopped vehicle.

31.     Prior to and during descending on Mr. Canaan's vehicle, Deputy Farias-Rios' body camera and various radio communications indicate that the deputies were aware Mr. Canaan may be severely injured:

> Unknown Deputy: *"He's not listening to instructions."*
>
> Deputy Farias-Rios: *"He's not coming out. I might have shot him."*
>
> Unknown Deputy: *"He's convulsing in the car. Foot on accelerator."*
>
> Unknown Deputy: *"He's leaning to the right, convulsing."*
>
> Deputy Farias-Rios: *"I can see his right hand. Nothing in his right hand."* (Mr. Canaan's left hand is clearly visible and is empty.)
>
> Unknown Deputy: *"I'm gonna pull him out."*

32.     Although Mr. Canaan was unconscious and unable to abide by any commands, the Securing Deputies and Deputy Farias-Rios forcibly removed him from his vehicle, threw him to the ground and onto his stomach, and wrested his hands behind him and placed him in restraints.

33.     Mr. Canaan was transported to Orlando Regional Medical Center, where it was determined that he suffered two (2) gunshot wounds. One round was discovered to be lodged in his aorta, while the other was lodged in his lower back.

34.     As a result of his gunshot injuries, Mr. Canaan is permanently paralyzed from the waist down, requiring a wheelchair and colostomy bag.

35.     The Defendants' conduct deprived Mr. Canaan of his various constitutional rights- to be free of the excessive use of force, to equal protection of the laws, and to due process under law. Each Defendant is liable for at least one constitutional violation. Each Defendant's conduct was also, at a minimum, tortious.

36.     Each Defendant caused Mr. Canaan grievous physical and mental pain and suffering, including his paralysis.

37.     The injuries to Mr. Canaan were a blatant violation of the federal constitutional, civil rights, and state law. This action is brought to seek justice to the fullest extent of those laws.

38.     At all times material to this Complaint, the following OCSO General Orders were in effect:

### OCSO General Orders

#### 8.1.6(4)(A)(4)
*When determining what level of force to use, deputies shall consider the risk to the public, including but not limited to, whether the deputy's use of force creates a substantial risk to the safety of the public, exceeding the danger to deputies or the public created by allowing the suspect to remain at large.*

#### 8.1.1(4)(H)(4)
*Deployment: The rifle may be utilized in circumstances to prevent injury to a deputy, victim, or other innocent bystander.*

## 8.1.6(2)

*When deadly force is justified, it will be considered a last resort and be employed for effect and not for warning.*

## 8.1.6(3)(C)

*Deadly Force- A force that is likely to cause death or great bodily harm, permanent disability or permanent disfigurement and includes, but is not limited to:*

1. *The firing of a firearm in the direction of the person to be arrested, even though no intent exists to kill or inflict great bodily harm; and*
2. *The firing of a firearm at a vehicle in which the person to be arrested is riding (FS 776.06).*
3. *…Deadly force includes discharging a firearm… or any use of force in a manner likely to cause death, great bodily injury, permanent disability or permanent disfigurement.*

## 8.1.6(4)(A)(1)(b)(6)

*4.Procedures*
  *A. Use of Force Matrix:*
    *1. The Use of Force Matrix is meant to be used as a guideline for a deputy to select effective, reasonable, and legal force options in a verbal or physical encounter. The Use of Force Matrix is comprised of Subject Resistance Levels and Officer Response Levels which incorporate the following:*
      *b. Officer Response Levels*
        *6. Deadly Force- high potential for great bodily harm or death: Techniques that may result in death, great bodily injury, permanent disability or disfigurement, such as impact weapon strikes to the head, or use of firearms as defined in FS 776.06. Deadly force techniques are a last resort.*

## 8.1.6(4)(N)

*Any deputy involved in an incident that requires the use of deadly or non-deadly force shall, when necessary, advise Communications to notify the appropriate emergency services and render medical aid within the scope of his or her training.*

## 8.1.6(4)(Q)(3)

*Members of the agency are not authorized to Use a firearm to arrest or prevent the flight of a person who has committed a misdemeanor or traffic violation.*

## 8.1.6(4)(Q)(4)

*Members of the agency are not authorized to Discharge their weapons at or into a moving vehicle unless it is absolutely necessary to do so*

*to protect against an imminent danger of death or serious bodily harm to the deputy or others.*

*Shooting at or into a moving vehicle can be ineffective and should only be considered as a last resort to protect the deputy or another from imminent danger of death or serious bodily harm. Deputies should consider all other reasonable means of defense to include but not limited to moving out of the path of a moving vehicle.*
.........
**8.1.6(4)(Q)(5)**
*Members of the agency are not authorized to Intentionally place themselves in the path of an oncoming vehicle and attempt to disable the vehicle by discharging their firearms.*

## CONSTRUCTION OF COMMON ALLEGATIONS

39.     This Complaint should be construed as if the allegations of paragraphs 1 through 38 are realleged and incorporated into each of the Counts stated below.

## COUNTS

### Count 1:
### Use of Excessive Force
### (Shooting Deputies)

40.     The conduct of the Shooting Deputies in shooting and permanently paralyzing Mr. Canaan constituted an unreasonable seizure of Mr. Canaan's person, which is actionable under 42 U.S.C. § 1983, as a violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

41.     The Shooting Deputies, who were acting under color of law, violated these constitutional rights when they:

    a. Used unauthorized and unreasonable deadly force against Mr. Canaan.

    b. Used their service weapons to fire at least fourteen (14) rounds at Mr. Canaan as he drove away from the scene of, at worst, a misdemeanor. Deputy Farias-Rios fired his handgun and Deputy Velazquez fired his AR-15 type rifle.

9

c. Of all rounds fired by the Shooting Deputies, three (3) were fired by Deputy Farias-Rios toward the rear of Mr. Canaan's vehicle as he was driving away. When the three (3) rounds were fired, Mr. Canaan's vehicle was approximately 200 feet away. OCSO investigation later revealed that one bullet fired by Deputy Farias-Rios traveled over 450 feet, crossed a highly traveled roadway, and entered through and exited out of a convenience store.

d. Mr. Canaan was struck by two bullets.

42. The actions above were undertaken with the Shooting Deputies willful, wanton, callous and knowing disregard to the clearly established rights of Mr. Canaan to be free from unreasonable seizures.

43. On the above referenced date, the Shooting Deputies violated one or more sections of OCSO's General Orders when they utilized deadly force against Mr. Canaan.

44. Further, the Shooting Deputies conduct shocks the conscience and offends traditional notions of decency.

45. As a direct and proximate result of the Shooting Deputies violations of Mr. Canaan's constitutional rights, Mr. Canaan suffered extreme physical and emotional pain and suffering, resulting in his paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

46. In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

47.     Mr. Canaan is entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Mr. Canaan seeks judgment against the Shooting Deputies, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**Count 2:**
**Use of Excessive Force**
**(Securing Deputies & Deputy Farias-Rios)**

48.     The conduct of the Securing Deputies and Deputy Farias-Rios constituted an unreasonable seizure of Mr. Canaan's person, which is actionable under 42 U.S.C. § 1983, as a violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

49.     42 U.S.C. § 1983 provides a civil remedy for violations of these constitutional rights by those acting under color of law.

50.     The Securing Deputies and Deputy Farias-Rios, who were acting under color of law, violated these constitutional rights when they used unnecessary and unreasonable physical force to remove a visibly unarmed and severely injured Mr. Canaan from his vehicle, and threw him to the ground.

51.     On the above referenced date, the Securing Deputies and Deputy Farias-Rios violated one or more sections of OCSO's General Orders when they utilized excessive force against Mr. Canaan.

52.     Further, the Securing Deputies' and Deputy Farias-Rios' conduct shocks the conscience and offends traditional notions of decency.

53.     As a direct and proximate result of the Securing Deputies' and Deputy Farias-Rios' violations of Mr. Canaan's constitutional rights, Mr. Canaan suffered extreme

physical and emotional pain and suffering, resulting in his paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

54.     In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

55.     Mr. Canaan is entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Mr. Canaan seeks judgment against the Securing Deputies and Deputy Farias-Rios, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## Count 3:
## Deliberate Indifference to Serious Medical Condition
## (Securing Deputies & Deputy Farias-Rios)

56.     The Eighth Amendment guarantees citizens freedom from cruel and unusual punishments. State actors violate this guarantee when their conduct demonstrates deliberate indifference to the serious medical needs of arrestees.

57.     The Fourteenth Amendment provides citizens with the constitutional right to be free from the deprivation of life and liberty without due process of law.

58.     42 U.S.C. § 1983 provides a civil remedy for violations of these constitutional rights by those acting under color of law.

59.     The Securing Deputies and Deputy Farias-Rios, who were acting under color of law, violated these constitutional rights when they forcibly removed Mr. Canaan

from his vehicle and threw him to the ground, despite Mr. Canaan's obvious and serious physical condition.

60.    In doing so, the Securing Deputies and Deputy Farias-Rios displayed deliberate indifference to Mr. Canaan's serious medical condition. They also behaved with callous, reckless disregard for his condition.

61.    The Securing Deputies' and Deputy Farias-Rios' actions and inactions described in this Count directly led to Mr. Canaan's injuries.

62.    This Securing Deputies and Deputy Farias-Rios knew or should have known that their actions would result in injuries to Mr. Canaan, as well as exacerbating injuries received from his gunshot wounds.

63.    On the above referenced date, the Securing Deputies and Deputy Farias-Rios violated one or more sections of OCSO's General Orders when they acted in complete disregard for Mr. Canaan's delicate physical situation and dire need for immediate medical care.

64.     Further, the Securing Deputies' and Deputy Farias-Rios' conduct shocks the conscience and offends traditional notions of decency.

65.    As a direct and proximate result of the Securing Deputies' and Deputy Farias-Rios' violations of Mr. Canaan's constitutional rights, Mr. Canaan suffered extreme physical and emotional pain and suffering, resulting in his paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

66.     In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

67.     Mr. Canaan is entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Mr. Canaan seeks judgment against the Securing Deputies and Deputy Farias-Rios, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**Count 4:**
**Negligence**
**(Shooting Deputies)**

68.     On January 31, 2017, the Shooting Deputies owed a duty to Mr. Canaan to use reasonable care in the handling of their firearms and decision-making related to the use of their firearms.

69.     The Shooting Deputies' handling of their firearms and their decision-making regarding use of their firearms were governed by one or more sections of OCSO's General Orders.

70.     On the above-reference date the Shooting Deputies violated one or more sections of the Orange County Sheriff's General Orders.

71.     On the above referenced date, the Shooting Deputies breached their duties to Mr. Canaan to use reasonable care in the handling of their firearms and decision-making regarding use of their firearms.

72.     As a direct and proximate result of the Shooting Deputies negligence, Mr. Canaan suffered extreme physical and emotional pain and suffering, resulting in his

paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

73.     In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

WHEREFORE, Mr. Canaan seeks judgment against the Shooting Deputies, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## Count 5:
## Gross Negligence
## (Shooting Deputies)

74.     On January 31, 2017, the Shooting Deputies owed a duty to Mr. Canaan to use reasonable care in the handling of their firearms and decision-making related to the use of their firearms.

75.     Notwithstanding said duties, the Shooting Deputies acted in a wanton and willful manner, exhibiting such carelessness and recklessness as to evince a conscious disregard for the safety of Mr. Canaan.

76.     The Shooting Deputies' aggressive attack on Mr. Canaan offends generally accepted standards of decency and morality.

77.     The Shooting Deputies were aware that they were not facing any imminent or serious threat of bodily harm or death. Thus, they knew or should have known that they had no right to use deadly force whatsoever with respect to Mr. Canaan. The Shooting

Deputies nonetheless violated one or more sections of OCSO's General Orders and used deadly force.

78.     As a direct and proximate result of the Shooting Deputies gross negligence, Mr. Canaan suffered extreme physical and emotional pain and suffering, resulting in his paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

79.     In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

WHEREFORE, Mr. Canaan seeks judgment against the Shooting Deputies, jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

### Count 6:
### Gross Negligence
### (Securing Deputies & Deputy Farias-Rios)

80.     On January 31, 2017, the Securing Deputies and Deputy Farias-Rios owed a duty to Mr. Canaan to use reasonable care and an appropriate level of force to apprehend him.

81.     Notwithstanding said duties, the Securing Deputies and Deputy Farias-Rios acted in a wanton and willful manner, exhibiting such carelessness and recklessness as to evince a conscious disregard for the safety of Mr. Canaan.

82.     The Securing Deputies' and Deputy Farias-Rios' aggressive attack on Mr. Canaan offends generally accepted standards of decency and morality.

83.     The Securing Deputies and Deputy Farias-Rios were aware that they were not facing any imminent or serious threat of bodily harm or death, as Mr. Canaan was unarmed. Mr. Canaan was clearly seriously injured and unconscious. Thus, they knew or should have known that they had no right to use excessive force whatsoever with respect to Mr. Canaan. The Securing Deputies and Deputy Farias-Rios nonetheless violated one or more sections of OCSO's General Orders and used excessive force to remove him from the vehicle and apprehend him.

84.     As a direct and proximate result of the Securing Deputies' and Deputy Farias-Rios' gross negligence, Mr. Canaan suffered extreme physical and emotional pain and suffering, resulting in his paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

85.     In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

WHEREFORE, Mr. Canaan seeks judgment against the Securing Deputies and Deputy Farias-Rios, jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## Count 7:
## Assault
## (Deputy Farias-Rios)

92.     On January 31, 2017, Deputy Farias-Rios made an intentional and unlawful offer of corporal injury to Mr. Canaan, by word and act, as demonstrated by:

a. Pointing his firearm at Mr. Canaan.

b. Threatening the use of deadly force against Mr. Canaan. Deputy Farias-Rios' can be heard on his body-camera video, stating, "I'm going to shoot you right now, dude!"

93.     Deputy Farias-Rios' offer of corporal injury was in direct violation to OCSO's General Orders regarding the use of force, as Mr. Canaan was, at worst, ignoring the commands of Deputy Farias-Rios during an investigation of a misdemeanor.

94.     Deputy Farias-Rios had the apparent present ability to effectuate the attempted action, as he was pointing his firearm at Mr. Canaan.

95.     Deputy Farias-Rios' offer of corporal injury created a fear of imminent peril in Mr. Canaan.

96.     As a direct and proximate result of Deputy Farias-Rios' assault, Mr. Canaan suffered emotional pain and suffering. He has engendered lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

97.     In addition, Mr. Canaan has suffered embarrassment and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

WHEREFORE, Mr. Canaan seeks judgment against Deputy Farias-Rios for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

### Count 8:
### Assault
### (Deputy Velazquez)

98.     On January 31, 2017, Deputy Velazquez made an intentional and unlawful offer of corporal injury to Mr. Canaan, by act, when he pointed his rifle at Mr. Canaan.

99. Deputy Velazquez's offer of corporal injury was in direct violation of OCSO's General Orders regarding the use of force, as Mr. Canaan was passively resisting the commands of Deputy Farias-Rios.

100. Deputy Velazquez had the apparent present ability to effectuate the attempted action, as he was pointing his rifle at Mr. Canaan.

101. Deputy Velazquez's offer of corporal injury created a fear of imminent peril in Mr. Canaan.

102. As a direct and proximate result of Deputy Velazquez's assault, Mr. Canaan suffered emotional pain and suffering. He has engendered lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

103. In addition, Mr. Canaan has suffered embarrassment and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

WHEREFORE, Mr. Canaan seeks judgment against Deputy Velazquez for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

### Count 9:
### Battery
### (Shooting Deputies)

104. On January 31, 2017, while acting in the scope of employment, the Shooting Deputies committed acts to cause harmful or offensive contact with Mr. Canaan, as evidenced by them firing at least fourteen (14) rounds at Mr. Canaan.

105. The Shooting Deputies acted intentionally, in bad faith, and with malicious purpose.

106.    Of the fourteen (14) rounds fired, two struck Mr. Canaan's body. One bullet was lodged in his aorta, while the other was lodged in his lower back.

107.    As a direct and proximate result of the Shooting Deputies' battery, Mr. Canaan suffered extreme physical and emotional pain and suffering, resulting in his paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

108.    In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

WHEREFORE, Mr. Canaan seeks judgment against the Shooting Deputies, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

### Count 10:
### Battery
### (Securing Deputies & Deputy Farias-Rios)

109.    On January 31, 2017, while acting in the scope of employment, the Securing Deputies and Deputy Farias-Rios committed acts to cause harmful or offensive contact with Mr. Canaan, as evidenced by them forcibly removing Mr. Canaan from his vehicle and throwing him to the ground.

110.    The Securing Deputies and Deputy Farias-Rios acted intentionally, in bad faith, and with malicious purpose.

111.    As a direct and proximate result of the Securing Deputies' and Deputy Farias-Rios' battery, Mr. Canaan suffered extreme physical and emotional pain and

suffering, resulting in his paralysis. He has engendered substantial and continuing medical and hospital bills, prejudgment interest on past medical expenses, lost wages and future lost wages, and he will continue to suffer said losses as a direct result thereof.

112. In addition, Mr. Canaan has suffered embarrassment, disability, and humiliation. His ability to lead a normal life and his capacity for the enjoyment of life have greatly diminished and will continue to be so in the future.

WHEREFORE, Mr. Canaan seeks judgment against the Securing Deputies and Deputy Farias-Rios, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**Count 11:**
**Intentional Infliction of Emotional Distress**
**(Shooting Deputies)**

113. The Shooting Deputies intentionally or recklessly inflicted emotional distress upon Mr. Canaan when they fired at least fourteen (14) rounds at him, striking him twice.

114. The actions of the Shooting Deputies were outrageous, as deadly force is not authorized to seize a passively resisting subject, per OCSO's General Orders regarding use of force.

115. Furthermore, the OCSO's General Orders state that shooting at or into a moving vehicle can be ineffective and should only be considered as a last resort to protect the deputy or another from imminent danger of death or serious bodily harm. Neither the Shooting Deputies nor any member of the public was in imminent danger of death or serious bodily harm.

116.   The actions of the Shooting Deputies caused severe emotional distress in Mr. Canaan.

WHEREFORE, Mr. Canaan seeks judgment against the Shooting Deputies, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## Count 12:
## Intentional Infliction of Emotional Distress
## (Securing Deputies & Deputy Farias-Rios)

117.   The Securing Deputies and Deputy Farias-Rios intentionally or recklessly inflicted emotional distress upon Mr. Canaan when they forcibly removed him from his vehicle and threw him to the ground, although he was significantly injured, unarmed, and unconscious.

118.   The actions of the Securing Deputies and Deputy Farias-Rios were outrageous, as Mr. Canaan's medical situation was obvious and delicate, as evidenced by his unconsciousness, his convulsing in the vehicle, visible blood on Mr. Canaan's person and in the interior of the vehicle, and the fact that his vehicle was riddled with bullet holes.

119.   The actions of the Securing Deputies and Deputy Farias-Rios caused severe emotional distress in Mr. Canaan.

WHEREFORE, Mr. Canaan seeks judgment against the Securing Deputies and Deputy Farias-Rios, jointly and severally, for compensatory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## Count 13:
## Maintaining a Custom and Policy Allowing
## Deputies to Use Excessive Force
## (Sheriff John Mina in his Official Capacity)

120.    Because this Count is against Mina in his official capacity, and because he succeeded Demings as Sheriff, he stands in the shoes of Demings as to this Count.

121.    Plaintiff is entitled to relief against Defendant, Sheriff John Mina, under the Fourth and Fourteenth Amendments of the United States Constitution because he was deliberately indifferent to the risk of harm to Mr. Canaan or another similarly situated.

122.    At all material times, Mina had an unofficial custom and practice of allowing deputies to use excessive force. Said unofficial custom and practice was so settled and permanent that it took on the force of the law.

123.    As a result of this unofficial custom and practice, from 2010 until 2020, OCSO paid out more than $1.6 million in excessive force settlements.[1]

124.    OCSO's own 2019 Use of Force Statistics indicate that deputies discharged firearms at persons multiple times per year. Specifically, 41 times from 2014 to 2020. Said shootings resulted in 16 suspect deaths and 19 others injured.[2]

125.    Excessive use of force has become a common practice within OCSO, and it is persistent and widespread.

126.    The following excessive use of force complaints against OCSO have either been met with litigation or investigated by FDLE and received unfavorable outcomes by the State Attorney of Orange County.

**Heid v. Rutkoski, et al.**
MDFL Case 6:20-cv-727

In April 2016 Heid was shot by two OCSO deputies when he was exiting his home with his hands raised and unarmed. He was shot six times by both officers.

---

[1] https://www.wesh.com/article/payouts-by-central-florida-law-enforcement-for-brutality/34285735
[2] https://www.ocso.com/en-us/Public-Interest/Deputy-Involved-Shootings

### Davis v. Briggs, et al.
MDFL Case 6:20-cv-249

Unarmed and unaggressive, Davis was beaten, choked, insulted, humiliated, threatened, assaulted, and battered by multiple deputies of OCSO. At least nine closed-fist punches were landed on Davis' upper back and arms, and deputies threatened to break his teeth.

### Estate of Torey Breedlove v. OCSO et al.
MDFL Case 6:11-cv-02027

Breedlove's vehicle was surrounded by 4 unmarked OCSO vehicles. Deputies fired over 130 rounds at Breedlove, striking him in excess of 20 times and killing him. Breedlove was unarmed and in the front seat at the time.

### Mike v. OCSO
MDFL Case 6:05-cv-00195

Mike was sitting in his car unarmed and two deputies shot him 9 times because the deputies were "unable to gain access through the rear window." Neither deputy advised nor visualized that he was armed. A subsequent search revealed no weapons on Mike nor in the vehicle.

### Walker v. OCSO, et al.
MDFL Case 6:03-cv-00586

Deputies responded to a domestic violence call. While the deputies were arresting Walker, they pinned his head to the floor and applied pressure to the back of his head, causing him to go into cardiorespiratory arrest and die.

### Murphy v. Demings, OCSO, et al
MDFL Case 6:12-cv-01712

Murphy was being followed by two undercover OCSO vehicles. Murphy's vehicle was struck by one of the OCSO vehicles and he fled. An OCSO deputy shot Murphy as he was running away. As he lay on the ground, seriously injured and stunned from being shot, the deputy continued firing his gun at Murphy. He was struck by at least one additional bullet.

### FDLE Case #OR-27-0250

In 2016, an off-duty deputy's vehicle was involved in an accident. The deputy followed the suspect to a nearby location. Once there, the deputy ordered the suspect to get on his knees and a struggle ensued. The deputy later claimed that he identified himself as a law enforcement officer. The suspect was shot in the stomach and remained in the hospital for several weeks. A review by the State

Attorney of Orange County found that the deputy's actions were dangerous and unnecessary, and that his credibility was questionable.

**FDLE Case #OR-27-0327**

In 2018, three deputies in an unmarked jeep began following a car that had pulled away from a known drug house. After some time, the victim was concerned that he was being followed and stopped his vehicle. The deputies also stopped, exited their jeep, and approached the victim's vehicle with flashlights illuminated. Worried that he was being robbed, the victim drove away. The deputies again followed him until the victim again stopped his car and exited with a firearm in his hand. The victim announced that he had a gun and the three deputies fired 13 rounds at him. The victim was shot twice and had non-life-threatening injuries. The State Attorney of Orange County expressed grave concerns regarding the conduct and truthfulness of one deputy.

127. Mina's failure to implement proper and consistent rules and procedures as to the use of force, and failure to address and remedy the ongoing issues regarding excessive use of force, created an unofficial custom and practice that allowed deputies to engage in the type of unnecessary harm that befell Mr. Canaan.

128. Mina's failure to implement proper and consistent rules and procedures as to the use of force, and failure to address and remedy the ongoing issues regarding excessive use of force, demonstrate a deliberate indifference to the risk that persons could be unnecessarily severely injured or killed.

129. As a direct and proximate result of Mina's unofficial custom and practice of allowing deputies to use excessive force, Mr. Canaan was needlessly shot and paralyzed, causing him to endure extreme physical, mental, and emotional pain and suffering.

WHEREFORE, Mr. Canaan demands judgment against Mina in his official capacity for actual and compensatory damages; attorney fees and costs; and any other relief that this Court deems just and proper.

**JURY DEMAND**

Mr. Canaan hereby demands trial by jury for all issues so triable.


Respectfully submitted this 25th day of October, 2021.

       s/ Mark M. O'Mara               
       MARK M. O'MARA, ESQUIRE
       Florida Bar No.:    359701
       E-Mail:  Mark@omaralawgroup.com
       RANDY E. LAMBERT, ESQUIRE
       Florida Bar No.:    1010756
       E-Mail:  randy@omaralawgroup.com
       O'MARA LAW GROUP
       221 NE Ivanhoe Boulevard, Suite #200
       Orlando, Florida  32804
       Telephone:   (407) 898-5151
       Facsimile:    (407) 898-2468
       Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the Middle District CM/ECF system on this 25th day of October, 2021, to Walter A. Ketcham, Esq., Brian F. Moes, Esq., and Ryan Dietrich, Esq. of the law firm of Grower, Ketcham, Edie, Telan & Meltz, P.A., PO Box 538065, Orlando, FL 32853-8065, waketcham@growerketcham.com, bfmoes@growerketcham.com, grdietrich@growerketcham.com; and Bruce R. Bogan, Esq. and David R. Jadon, Esq. of the law firm of Hilyard, Bogan & Palmer, P.A., PO Box 4973, Orlando, FL 32802-4973, bbogan@hilyardlawfirm.com, djadon@hilyardlawfirm.com.

       s/ Mark M. O'Mara               
       MARK M. O'MARA, ESQ.